1  RICHARD A. JONES (State Bar No. 135248)
   COVINGTON & BURLING
2  One Front Street
   San Francisco, California 94111
3  Telephone: (415) 591-6000
   Fax: (415) 591-6091
4
   E. EDWARD BRUCE
5  STUART C. STOCK
   KEITH A. NOREIKA
6  COVINGTON & BURLING
   1201 Pennsylvania Avenue, N.W.
7  Washington, D.C. 20004
   Telephone: (202) 662-6000
8  Fax: (202) 662-6291
9  Attorneys for Plaintiffs

10              IN THE UNITED STATES DISTRICT COURT

11           FOR THE NORTHERN DISTRICT OF CALIFORNIA

12  _____

13  BANK OF AMERICA, N.A.;                    )
    BANK OF AMERICA, N.A. (USA);              )
14  BANC OF AMERICA INVESTMENT                )
        SERVICES, INC.;                       )
15  BANC OF AMERICA INSURANCE                 )
        SERVICES, INC.;                       )
16  WELLS FARGO BANK, N.A.;                   )   Civil Action No.
    WELLS FARGO BANK NEVADA, N.A.;            )
17  WELLS FARGO INSURANCE, INC.;              )   **COMPLAINT FOR**
    WELLS FARGO HOME MORTGAGE, INC.,          )   **DECLARATORY RELIEF,**
18                                            )   **AND PERMANENT INJUNCTION**
               Plaintiffs,                    )
19                                            )
          versus                              )
20                                            )
    COUNTY OF SANTA CLARA, CALIFORNIA;        )
21  BLANCA ALVARADO, Chairperson, Board of    )
    Supervisors;                              )
22  DONALD F. GAGE, Supervisor;               )
    PETE MCHUGH, Supervisor;                  )
23  JIM BEALL, Supervisor;                    )
    LIZ KNISS, Supervisor;                    )
24  PHYLLIS A. PEREZ, Clerk, Board of         )
    Supervisors;                              )
25  ANN MILLER RAVEL, County Counsel,         )
                                              )
26             Defendants.                    )
    _____

27

28

COMPLAINT FOR DECLARATORY RELIEF, AND PERMANENT INJUNCTION—PAGE 1

1.  This complaint seeks declaratory and injunctive relief to protect the federal rights of Bank of America, N.A., Bank of America, N.A. (USA), Banc of America Investment Services, Inc. ("BAI"), Banc of America Insurance Services, Inc. ("BAISI"), Wells Fargo Bank, N.A., Wells Fargo Bank Nevada, N.A., Wells Fargo Insurance, Inc. ("WFII"), and Wells Fargo Home Mortgage, Inc. ("WFHMI") (collectively "Plaintiffs"),[1] under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681t(b)(2), the National Bank Act ("NBA"), 12 U.S.C. § 24(Seventh), the Gramm-Leach-Bliley Act of 1999 ("GLBA"), Pub. L. No. 106-102 (codified at 15 U.S.C. § 6701(d)), and the Supremacy Clause of the federal Constitution.  In this action, Plaintiffs seek injunctive and declaratory relief that will allow them to use information, organize and operate notwithstanding the County of Santa Clara ("Santa Clara") Ordinance Number NS-300.706, enacted on February 11, 2003 (attached hereto).  This Ordinance, which becomes operative on January 1, 2004, constrains Plaintiffs from sharing or disclosing information about their customers among affiliates and with third parties, upon which Plaintiffs rely in offering their services to the residents of Santa Clara, contrary to the rights conferred on Plaintiffs by the FCRA, NBA, and GLBA.  Plaintiffs bring this action in light of this Court's decision in *Bank of America, N.A. v. City of Daly City*, 2003 WL 22048515 (N.D. Cal. July 29, 2003), which held that substantially identical ordinances are preempted by the FCRA insofar as they impose restrictions or prohibitions on the exchange of customer information among affiliates.

2.  As a matter of policy, both Bank of America and Wells Fargo offer their customers an opportunity to direct that they not be solicited by affiliates or third parties who jointly market products.  Moreover, Bank of America Plaintiffs do not share or disclose customer information with third parties that are neither affiliates, nor service providers for marketing purposes, unless the customer has consented.  Wells Fargo Plaintiffs do not share or

---

[1]   Bank of America, N.A. and Wells Fargo Bank, N.A. are collectively hereinafter referred to as "Plaintiff Banks" or "the Banks"; Bank of America, N.A. (USA) and Wells Fargo Bank Nevada, N.A. are collectively hereinafter referred to as "Credit Card Banks"; BAISI and WFII are collectively hereinafter referred to as "the Insurance Affiliates."

disclose customer information with third parties that are neither affiliates, nor service providers

for marketing purposes unless the customer has consented, except that Wells Fargo Bank

Nevada, and WFII engage through joint agreements in the sale, solicitation and cross-marketing

of insurance and certain other products and services with third parties as authorized by GLBA,

15 U.S.C. § 6802(b)(2). The Ordinance is enforced by civil actions or administrative measures

undertaken by local officials. The Ordinance becomes operative January 1, 2004.

**Jurisdiction and Venue**

3.     This action is brought under the Supremacy Clause of the United States

Constitution, the FCRA, NBA, GLBA, and 42 U.S.C. § 1983. The Court has jurisdiction over

this action pursuant to 28 U.S.C. § 1331 because it arises under the Constitution and laws of the

United States. In addition, jurisdiction is proper under 28 U.S.C. § 1343(a)(3), because

Defendants, under color of state law, seek to deprive Plaintiffs of their federal constitutional

rights. This Court is authorized to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201

& 2202.

4.     Venue in this district is proper under 28 U.S.C. § 1391(b)(1) because

Defendants reside in this district and under § 1391(b)(2) because all of the events and omissions

giving rise to this case occurred in this district.

**Intradistrict Assignment**

5.     Pursuant to Civil Local Rule 3-2(c) and (d), this matter should be

assigned to the San Jose Division of this Court because all of the events or omissions giving rise

to the claim occurred in Santa Clara County.

**Related Cases**

6.   This case is related to *Bank of America, N.A. v. City of Daly City, California*,

Civ. Nos. C 02-4343 CW & C 02-4943 consolidated, and *Bank of America, N.A. v. Alameda*

*County, California*, Civ. No. C 03-2119 CW. This case involves a municipal ordinance

restricting financial institutions' sharing or disclosing of customer information with affiliates

and nonaffiliated third parties that is substantially identical to one or more of the ordinances in

those cases. The local laws in those cases were challenged on the same grounds as the ones raised here, *i.e.*, that they are preempted by FCRA, GLBA, and NBA. This Court decided those issues in the *Daly City* case and the *Daly City* decision is controlling, subject to Plaintiffs' appeal of the GLBA issue. Assignment of these actions to the same judge that decided the *Daly City* case would allow a prompt disposition of this case, whereas assignment to a different judge would risk inconsistent results and would waste judicial resources.

### The Parties

7. Bank of America, N.A. ("Bank of America") is a national banking association organized and existing under the National Bank Act, 12 U.S.C. § 21 *et seq.* Bank of America operates numerous branches in California, as well as numerous branches in 21 other states and the District of Columbia. It maintains its main office in Charlotte, North Carolina, while its principal California office is in San Francisco. Bank of America has at least one branch in unincorporated Santa Clara County.

8. Bank of America, N.A. (USA), is a national banking association organized and existing under the National Bank Act, 12 U.S.C. § 21 *et seq.* Bank of America, N.A. (USA) markets its credit card products, as well as a debit card on behalf of Bank of America, to customers, and potential customers of Bank of America including those in Santa Clara County, and uses Bank of America's customer information to do so. Bank of America, N.A. (USA) maintains its main office in Phoenix, Arizona.

9. BAI is an operating subsidiary of Bank of America pursuant to regulations of the Office of the Comptroller of the Currency ("OCC") issued under the National Bank Act. BAI solicits, sells, and markets securities and investment products to the existing customer base of the Bank of America franchise, including customers of Bank of America, such as those in Santa Clara County, and uses Bank of America's customer information to do so.

10. BAISI is a financial subsidiary of Bank of America pursuant to OCC regulations issued under the National Bank Act. BAISI solicits, sells, and markets insurance products to the existing customer base of the Bank of America franchise, including customers of

Bank of America, such as those in Santa Clara County, and uses Bank of America's customer information to do so.

11.     Wells Fargo Bank, N.A. ("Wells Fargo Bank") is a national banking association organized and existing under the National Bank Act, 12 U.S.C. § 21 *et seq.* Wells Fargo Bank operates numerous branches in California. Its affiliated national banks have numerous branches in more than 20 additional states. It maintains its main office and principal place of business in San Francisco.

12.     Wells Fargo Bank Nevada, N.A., is a national banking association organized and existing under the National Bank Act, 12 U.S.C. § 21 *et seq.* In addition to providing bank services to customers located in Nevada, Wells Fargo Bank Nevada markets its credit card products, as well as a debit card on behalf of Wells Fargo Bank, to Wells Fargo Bank customers, and potential customers, in Santa Clara, and uses Wells Fargo Bank's customer information to do so. Wells Fargo Bank Nevada also sells, solicits and crossmarkets insurance and certain other products and services through joint agreements with third parties as authorized by GLBA, 15 U.S.C. § 6802(b)(2). In doing so, it uses Wells Fargo Bank's customer information. Wells Fargo Bank Nevada maintains its main office in Las Vegas, Nevada.

13.     WFII is organized as a subsidiary of Wells Fargo & Company, the ultimate holding company of Wells Fargo Bank and Wells Fargo Bank Nevada. WFII solicits, sells, and markets insurance products to the existing customer base of the Wells Fargo franchise, including customers of Wells Fargo Bank in Santa Clara County, and uses Wells Fargo Bank's customer information to do so. WFII also sells, solicits and crossmarkets insurance through joint agreements with third parties as authorized by GLBA, 15 U.S.C. § 6802(b)(2). In doing so, it uses Wells Fargo Bank's customer information.

14.     WFHMI is organized as an operating subsidiary of Wells Fargo Bank pursuant to OCC regulations issued under the National Bank Act. WFHMI solicits, sells, and markets mortgage products to the existing customer base of the Wells Fargo franchise, including

customers of Wells Fargo Bank, such as those in Santa Clara County, and uses Wells Fargo Bank's customer information to do so.

15.     Defendant Santa Clara County is an unincorporated municipal organization located in the State of California. For purposes of this action, it exercises local government powers under state law with respect to the unincorporated portions of the County.

16.     Defendant Blanca Alvarado is Chairperson of Defendant Santa Clara County Board of Supervisors. As such, she is a voting member of the Board of Supervisors.

17.     Defendants Donald F. Gage, Pete McHugh, Jim Beall, Liz Kniss are voting members of the Board of Supervisors of Defendant Santa Clara County.

18.     Defendant Phyllis A. Perez is the Clerk of the Board of Supervisors of Defendant Santa Clara County. As such, she is the City official charged with taking the ministerial acts necessary for the Santa Clara Ordinance to become effective.

19.     Defendant Ann Miller Ravel, is the County Attorney of Defendant Santa Clara County. As such, she is the county official charged with enforcing the municipal code of Santa Clara County, including the enforcement provisions of the Santa Clara County Ordinance.

## The Relevant Federal Statutory and Constitutional Provisions:

## The Fair Credit Reporting Act

20.     The FCRA, 15 U.S.C. § 1681 *et seq.*, defines the rights and obligations of banks, financial institutions and other corporations that receive, use, collect or exchange information regarding the creditworthiness of consumers and certain other consumer characteristics. Among other things, the FCRA expressly authorizes such institutions to exchange information with their affiliates regarding their experiences with their customers. For example, the FCRA allows financial institutions and other corporations to share or disclose information with affiliates, which they have derived from their dealing with their customers – so-called "experience information" – including information regarding those customers' "credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living." 15 U.S.C. § 1681m(b)(1). The FCRA imposes no

restrictions on the sharing or disclosing of other information about customers – such as their names and addresses – that does not relate to creditworthiness or the above-quoted consumer characteristics.

21.     The FCRA provides that "[n]o requirement or prohibition may be imposed under the laws of any State . . . with respect to the exchange of information among persons affiliated by common ownership or common corporate control . . . ." 15 U.S.C. § 1681t(b)(2). As this Court held in the *Daly City* case, this provision expressly preempts local laws that impose requirements or prohibitions on the sharing or disclosing between affiliates of any type of information relating to their customers. 2003 WL 22048515.

**The National Bank Act**

22.     National banks are federally-chartered institutions created under, governed and exercising their authorized powers as granted by the National Bank Act, 12 U.S.C. § 21 *et seq.*

23.     Under the National Bank Act, the OCC has exclusive regulatory, supervisory and enforcement authority with respect to national banks' provision of banking services. *See* 12 U.S.C. §§ 24(Seventh), 484(a).

24.     Congress has authorized national banks "[t]o exercise . . . all such incidental powers as shall be necessary to carry on the business of banking." 12 U.S.C. § 24(Seventh). These powers under 12 U.S.C. § 24(Seventh) include the authority to advertise and market the national bank's own products and services, as well as those of its affiliates, and to organize in the most efficient and effective form, including undertaking activities through operating subsidiaries and/or affiliates, *see, e.g.*, 12 C.F.R. § 5.34. National banks and their subsidiaries may also engage in authorized activities through joint marketing arrangements with nonaffiliated third parties.

25.     The OCC has promulgated a regulation, 12 C.F.R. § 7.4006, which provides that national banks' operating subsidiaries enjoy the same preemptive protection of the National Bank Act as their parent national banks.

**Gramm-Leach-Bliley Act Privacy Provisions**

26.     Subtitle A of title V of GLBA provides a comprehensive federal scheme to regulate financial institutions' sharing or disclosing of nonpublic personal information with affiliates and nonaffiliated third parties. *See* 15 U.S.C. § 6801 *et seq.* GLBA provides that financial institutions, like Plaintiffs, may not disclose nonpublic personal information to a nonaffiliated third party unless they provide the customer with notice and an opportunity to opt out of such third-party information sharing or disclosure. 15 U.S.C. § 6802(a) & (b)(1). GLBA provides, as a limited exception to its "opt out" requirement for sharing or disclosure with nonaffiliated third parties, the ability to share or disclose with such third parties if it is pursuant to a "joint agreement," *i.e.*, an agreement with another financial institution to market jointly a product or service. *See* 15 U.S.C. § 6802(b)(2).

27.     Like the FCRA, GLBA does not restrict a financial institution's sharing or disclosure of information with its own affiliates. Subtitle A of title V of GLBA provides that the GLBA "shall [not] be construed to modify, limit, or supersede the operation of the [FCRA]," 15 U.S.C. § 6806, and Subtitle A of title V of GLBA does not purport to affect the operation of the National Bank Act.

28.     The annual notice to the consumer under GLBA must include the "financial institution's policies and practices with respect to . . . (1) disclosing nonpublic personal information to affiliates and nonaffiliated third parties . . .; (2) disclosing nonpublic personal information of persons who have ceased to be customers of the financial institution; and (3) protecting the nonpublic personal information of consumers." 15 U.S.C. § 6803(a). In addition, the notice must contain information "with respect to . . . the categories of persons to whom the information is or may be disclosed"; "the categories of nonpublic personal information collected by the financial institution," and "the disclosures required" for the customer to "opt out" of "non-experience" information sharing or disclosure among affiliates as provided for by FCRA.

1

### Gramm-Leach-Bliley Act Insurance Preemption Provision

2       29.    Section 104(d)(2)(A) of title I of GLBA provides that "[i]n accordance

3   with the legal standards for preemption set forth in the decision of the Supreme Court of the

4   United States in *Barnett Bank of Marion County, N.A. v. Nelson*, 517 U.S. 25 (1996), no State

5   may, by statute, regulation, order, interpretation, or other action, prevent or significantly

6   interfere with the ability of a depository institution, or an affiliate thereof, to engage, directly or

7   indirectly, either by itself or in conjunction with an affiliate or any other person, in any

8   insurance sales, solicitation, or crossmarketing activity." 15 U.S.C. § 6701(d)(2)(A).  Bank of

9   America and Wells Fargo Bank are "depository institutions" within the meaning of 15 U.S.C.

10   § 6701(d)(2)(A), and BAISI and WFII are "affiliates" of depository institutions within the

11   meaning of 15 U.S.C. § 6701(d)(2)(A).

12           **Supremacy Clause of the United States Constitution**

13       30.    Article VI of the United States Constitution provides that "[t]his

14   Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . .

15   shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to

16   the Contrary notwithstanding."

17                   **The Santa Clara Ordinance**

18       31.    The Santa Clara Ordinance was adopted after a second reading by the

19   Santa Clara County Board of Supervisors on February 11, 2003.  It will become operative on

20   January 1, 2004.  Ordinance § B4-1.

21       32.    The Santa Clara Ordinance applies to any "financial institution," which

22   "generally means any institution located in unincorporated Santa Clara County that engages in

23   financial activities." Ordinance § B4-3(c).  The Ordinance applies to information regarding any

24   "natural person . . . that obtains or has obtained a financial product or service from a financial

25   institution that is to be used for personal, family or household purposes, and the person

26   (A) resides in unincorporated County of Santa Clara, or (B) obtains or has obtained the product

27   or service while present in unincorporated County of Santa Clara" (hereinafter "Santa Clara

28   County consumers" or "Santa Clara County customers"). Ordinance § B4-3(f).

33.     The Santa Clara Ordinance provides that "[a] financial institution shall not disclose to, or share a consumer's confidential consumer information with any nonaffiliated third party or affiliate unless (1) the financial institution has provided written or electronic notice to the consumer to whom the confidential consumer information relates and (2) . . . has obtained a written or electronic consent acknowledgment from the consumer that authorizes the financial institution to disclose or share the confidential consumer information [*i.e.*, a consumer 'opt in']." Santa Clara Ordinance § B4-4(a). Moreover, under the Ordinance, the opt-in by a consumer must be renewed each time that a financial institution sends out new notices pursuant to the Ordinance, which will occur at least once a year. Ordinance § B4-5(d). Accordingly, even as to those customers who have previously opted-in to allow sharing or disclosure with affiliates and others, the Banks will be precluded from such sharing or disclosure until they receive a renewed opt-in from the consumer. The imposition of restrictions on sharing or disclosure of information with affiliates is directly contrary to, and expressly preempted by, the FCRA which expressly permits such sharing or disclosure.

34.     The "[w]ritten notices required by" the Santa Clara Ordinance must "include at least" "(1) The specific types of information that would be disclosed or shared, (2) The general circumstances under which the information would be disclosed or shared, (3) The specific types of persons or businesses that would receive the information, and (4) The specific proposed types of uses for the information." Santa Clara Ordinance § B4-5(c). The Santa Clara Ordinance further provides that "[a] financial institution shall provide written or electronic notices and consent acknowledgements required by this [Ordinance] to consumers as separate documents that are easily identifiable and distinguishable from other documents that otherwise may be provided to a consumer." Santa Clara Ordinance § B4-5(b). The notice required by the Ordinance is more specific than the notice required by the FCRA and GLBA.

35.     Under the Ordinance, "[c]onfidential consumer information includes, but is not limited to," "(1) Information a consumer provides to a financial institution on an application to obtain a loan, credit card, or other financial product or service. (2) Account

balance information, payment history, overdraft history and credit or debit card purchase information.  (3) The fact that an individual is or has been a customer of a financial institution or has obtained a financial product or service from a financial institution" and "a consumer's Social Security number."  Ordinance § B4-3(b).

36.     Under the Santa Clara Ordinance, a financial institution is liable for "administrative fines" for a violation of the Ordinance of up to $2,500 for each negligent violation of the Ordinance "irrespective of the amount of damages suffered by the consumer as a result of th[e] violation"; of up to $25,000 for each knowing and willful violation of the Ordinance; and of up to $250,000 for each knowing and willful violation of the Ordinance that results in financial gain to the financial institution (which is also subject to disgorgement). *Id.* § B4-7.

### The Effect Of The Ordinance

37.     The effect of an "opt-in" regime on financial institutions would be tantamount to a prohibition on information sharing or disclosure with both corporate affiliates and nonaffiliated third parties as otherwise authorized by applicable federal law.  Most individuals will not take the time to opt-in to information sharing or disclosure among corporate affiliates, even though they might otherwise benefit from such sharing or disclosure in the form of more efficient and cost-effective financial services.  Moreover, the Ordinance makes its opt-in requirements even more restrictive by requiring a new opt-in every time a new notice is sent to customers, which will occur at least once each year.  Ordinance § B4-5(d).  Accordingly, the Banks would have to remove customer information from the databases they share or disclose with affiliates even for customers who have previously opted-in, and could re-input that information into the shared database only after receiving a new opt-in.  As a practical matter, the Banks could be forced to exclude all unincorporated Santa Clara consumers, as opposed to continually changing the database under the Santa Clara County on-off system.  By contrast, under the FCRA, information that the institution obtains from its own experience with a consumer regarding that individual's "credit worthiness, credit standing, credit capacity,

character, general reputation, personal characteristics, or mode of living," 15 U.S.C.
§ 1681m(b)(1), can be shared or disclosed without restriction among affiliates under the FCRA,
as can other information, such as a customer's name, which does not relate to creditworthiness.
Non-experience information bearing on creditworthiness or the above-quoted characteristics,
such as information derived from credit reports, can be shared or disclosed if notice is given to
customers and they do not opt out of such information sharing or disclosure, 15 U.S.C.
§ 1681a(d)(2).

38.     Plaintiffs carry on their authorized activities in interstate commerce, as
part of the nationwide banking, currency and credit system established by the NBA, 12 U.S.C.
§ 21 *et seq.* At significant costs – including, for example, the cost of drafting privacy notices
under the GLBA, and implementing a consumer "opt out" regime under the GLBA and the
FCRA – the Bank of America Plaintiffs and the Wells Fargo Plaintiffs have each established
and maintain for their respective organizations a centralized customer information sharing or
disclosure system among the Plaintiff Banks and their subsidiaries and affiliates to carry on their
operations in the most efficient way possible.  These centralized systems and databases were set
up consistent with the requirements of the FCRA and are used by the Bank of America and
Wells Fargo Plaintiffs, respectively, to provide account servicing for the Plaintiff Banks and all
their affiliates, which for Wells Fargo includes more than 20 other national banks that are
located outside California.  These coordinated systems are also used to provide marketing
information to all of the Plaintiff Banks' affiliates.  These systems cannot effectively be
separated for use solely for the Plaintiff Banks' servicing and marketing activities.  As part of
this corporate organization, the Bank of America Plaintiffs and the Wells Fargo Plaintiffs and
their respective subsidiaries and affiliates, operate as separate corporate entities but share or
disclose customer information among themselves to serve their organization's customers better,
promote their products and services, and earn profits.  For example, each Plaintiff Bank uses its
affiliated Credit Card Bank to market products, including debit cards issued by the Plaintiff
Bank, to the Plaintiff Bank's own customers:  These efficient allocations of responsibilities

among the Banks' overall corporate organizations would be effectively prohibited by the Ordinance's opt-in requirements for all Santa Clara County customers.

39.     The Ordinance, if effective, would prevent all financial institutions, including Plaintiff Banks, from sharing or disclosing any Santa Clara County consumer confidential information among affiliates or with nonaffiliated third party joint marketing partners until and unless the consumer gives a written or electronic "opt in" consent and then annually renews that consent.  If it becomes effective, the Ordinance would force Plaintiff Banks to:  (1) close their branches in unincorporated Santa Clara County, and thereby escape the limitations of the Ordinance; (2) cease offering certain products and services through affiliates and subsidiaries, and cease being able to have Plaintiff Banks' subsidiaries and affiliates offer the Banks' products and services, through the use of shared databases or otherwise, to Santa Clara County customers; or (3) market products and services to Santa Clara County customers that Plaintiff Banks would otherwise not offer if they could market the products and services more effectively and efficiently through their affiliates and subsidiaries.

40.     The Ordinance's limited application to consumers located, for instance, in unincorporated Santa Clara County requires the Banks to determine exactly where their customers reside – for example, in the City of San Jose, which is not part of unincorporated Santa Clara County, or in other locations that are.  The Banks cannot readily separate out customers based on zip-codes or the like, because such easily defined markers cross the boundary between incorporated and unincorporated parts of the County.

41.     Consistent with the FCRA and GLBA, Plaintiffs use their respective databases for the exchange of customer information with their affiliates.  Plaintiffs would be required to expend significant sums and effort to extract Santa Clara County customers from the Plaintiffs' established data exchange practices and to establish separate databases to deal with those customers.

42.     The Ordinance will also affect the Credit Card Banks and WFHMI.  If the Ordinance become effective, the ability of the Credit Card Banks and WFHMI, which are not

even located in Santa Clara County, to market and sell their own products and services to Santa Clara County customers and potential customers would be curtailed or prevented because they could not continue to use Plaintiff Banks' customer databases.

43.     Similarly, the effect of the Ordinance on the Insurance Affiliates would be significant.  Presently, the Insurance Affiliates, which also are not located in Santa Clara County, market and sell almost entirely to the existing customer base of Plaintiff Banks and their affiliates.  By preventing the Insurance Affiliates from accessing their parent and affiliated Banks' customer names and addresses, the Insurance Affiliates' sales and marketing operations to Santa Clara County customers would be curtailed.

44.     The Ordinance would impair BAI's marketing activities, for example by preventing Bank of America from providing the names of its own Santa Clara County customers to BAI, as well as the parent Bank's "experience information" with its Santa Clara County customers.  Finally, the Ordinance would interfere with BAI's use of dual-employees, those who are employed both as bankers at Bank of America, while also operating as BAI sales employees.

45.     The Ordinance would also prevent or interfere significantly with the ability of Wells Fargo Bank Nevada and WFII to engage in the sale, solicitation and crossmarketing to Santa Clara County residents of insurance and certain other products and services through joint agreements authorized by 15 U.S.C. § 6802(b)(2).

46.     The Ordinance's notice requirements would also cause further substantial injury to Plaintiff Banks.  The Banks would, at significant expense, have to create separate notices to comply with the Ordinance, which would have to be sent to customers as separate stand-alone documents.  The Banks could not integrate these notices with those of their affiliates as they now do for the notice required under federal law.

47.     A case or controversy exists between the parties requiring resolution by this Court.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Claims for Relief**

**Count I – Declaratory and Injunctive Relief:**

**FCRA Preemption of the Ordinance**

48.     Plaintiffs incorporate and reallege each and every allegation contained in paragraphs 1 to 47 of this Complaint as though fully set forth herein.

49.     The FCRA expressly allows financial institutions to share or disclose with affiliates, without restriction, information that they obtain from their own transactions with the consumer, including information regarding the consumer's "credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living." 15 U.S.C. § 1681m(b)(1).  The FCRA also expressly allows such institutions to share or disclose other information bearing on creditworthiness or relating to the aforementioned consumer characteristics – so called "non-experience information" – with their affiliates, provided that the institution gives the consumer the opportunity to "opt out" of such non-experience information sharing or disclosure before it occurs.  15 U.S.C. § 1681a(d)(2).  The FCRA does not impose any restrictions on the sharing or disclosure of information not bearing on creditworthiness or related to the other listed consumer characteristics.

50.     The FCRA provides that "[n]o requirement or prohibition may be imposed under the laws of any State . . . with respect to the exchange of information among persons affiliated by common ownership or common corporate control . . .," except for a specified Vermont statute in effect on September 30, 1996.  15 U.S.C. § 1681t(b)(2).  This prohibition applies to state and local laws enacted on or before January 1, 2004.  *Id.* § 1681t(d).

51.     The Ordinance imposes "requirement[s] and prohibition[s] . . . with respect to the exchange of information among persons affiliated by common ownership or common corporate control" by, *inter alia*, providing for the requirement of a separate notice and the requirement of an annual opt-in before Plaintiffs can share or disclose information with affiliated entities.  Accordingly, this Court in the *Daly City* case held that the FCRA preempted three other ordinances of local governments located in this district substantially identical to the

Santa Clara Ordinance, to the extent they restricted or prohibited the exchange of information among affiliates.

52.     The Ordinance is expressly preempted by 15 U.S.C. § 1681t(b)(2), and is unconstitutional under Article VI of the United States Constitution.

### Count II – Declaratory and Injunctive Relief:
### National Bank Act Preemption of the Ordinance

53.     Plaintiffs incorporate and reallege each and every allegation contained in paragraphs 1 to 47 of this Complaint as though fully set forth herein.

54.     Plaintiffs have the authority under the National Bank Act "to exercise all such incidental powers as shall be necessary to carry on the business of banking." 12 U.S.C. § 24(Seventh).  National banks' authorized powers under § 24(Seventh) include the power to advertise and market their authorized services.

55.     OCC regulations implementing the National Bank Act provide that "[a] national bank may conduct in an operating subsidiary activities [including marketing activities] that are permissible for a national bank to engage in directly either as part of, or incidental to, the business of banking." 12 C.F.R. § 5.34(e).  Further, the OCC has provided by regulation that "[u]nless otherwise provided by Federal law or OCC regulation, State laws apply to national bank operating subsidiaries to the same extent that those laws apply to the parent national bank." 12 C.F.R. § 7.4006.

56.     The Ordinance prevents national banks from sharing or disclosing confidential consumer information with their affiliates unless a consumer opts in to allow such sharing or disclosure.  Even in these circumstances, the authority to share or disclose lapses when the annual notice required by the Ordinance is sent to the customer who has previously opted-in.  Ordinance § B4-5(d).  Such lapses in the authority to share or disclose even the data regarding opted-in customers with affiliates could make it prohibitively expensive to add and delete such customers from the databases that the Banks share or disclose with their affiliates. By so prohibiting a national bank's ability to transmit through shared databases information

about customers to affiliates who then market the Banks' own products and services, the Ordinance prevents or substantially interferes with the Banks' federally authorized power to advertise and market their own products to their own customers through their affiliates, for example the marketing of Plaintiff Banks' debit cards through the Credit Card Banks. Accordingly, the Ordinance conflicts with national banks' federally authorized powers under 12 U.S.C. § 24(Seventh).

57.  The Santa Clara Ordinance has additional impacts on Wells Fargo. Unlike Bank of America, which operates its branches throughout the United States as part of a single corporate entity, the Wells Fargo banks are separately incorporated national banks for each of the more than 20 states in which Wells Fargo has branches. In some situations, one Wells Fargo bank provides a service or product for all of the affiliated Wells Fargo banks. Thus, Wells Fargo Bank, N.A. provides the home equity loan products and Wells Fargo South Dakota, N.A. provides the student loan products for all Wells Fargo banks. The Ordinance's prohibitive annual opt-in requirement would prevent Wells Fargo from using its common database to provide integrated, seamless service to customers throughout the United States. For example, Wells Fargo Arizona could not view the experience information in the Wells Fargo central database if a Santa Clara County consumer applied for a loan at an Arizona branch or came to the branch to cash a Wells Fargo check. In these circumstances, the Santa Clara County consumer would therefore be treated by the Arizona bank as though he or she was not a Wells Fargo customer.

58.  The opt-in restriction would also seriously impair Plaintiff Banks' federally authorized authority to engage in deposit taking and lending operations under 12 U.S.C. § 24(Seventh). Bank of America for many years has used a subsidiary, Bank of America Technology and Operations, Inc. ("BATO"), to handle all data processing and records storage for its accountholders. Wells Fargo similarly uses a single database (maintained by Wells Fargo Services Company ("WFSC")) that contains all of its experience information about its customers which is available to all affiliated Wells Fargo banks and other consumer financial

affiliates. This experience information about particular customers cannot be separated by the Banks so that other affiliates receive it only for account maintenance purposes. The Banks accordingly would be effectively precluded from sending to BATO or WFSC information about Santa Clara County customers that is used by the Banks for all of their customer contact and account functioning. Wells Fargo Bank faces greater problems regarding its utilization of WFSC since it is used by all affiliated national banks to provide core banking services to Santa Clara County customers.

59.    The Ordinance would also impair Plaintiff Banks from exercising their powers under 12 U.S.C. § 24(Seventh) and OCC regulations, 12 C.F.R §§ 5.34, 5.39 & 7.4006, to offer their Santa Clara County customers and potential customers products and services indirectly through their subsidiaries and affiliates. Instead, the Ordinance would require the Banks to do so directly or not at all. Plaintiff Banks would therefore be forced to offer products and services to their Santa Clara County customers that they otherwise would not offer (because, absent the Ordinance, they would only offer them through an affiliated or nonaffiliated third party), or would be prevented from offering such products and services to these customers through third parties because of the information sharing and disclosure restrictions of the Ordinance. For example, the Ordinance would prevent the Credit Card Banks, as national banks, from using Bank of America's and Wells Fargo Bank's customer information to market and sell the Credit Card Banks' credit card products and services. Similarly, WFHMI, an operating subsidiary of Wells Fargo Bank, could not use Wells Fargo Bank customer information to market and sell WFHMI's products to Wells Fargo Bank customers, or to offer mortgage rate discounts to Wells Fargo Bank customers who maintain specified asset balances with the Wells Fargo franchise. If Wells Fargo Bank wanted to use such information to solicit such customers for a discount-rate mortgage, for example, it would have to offer such mortgages as its own product, rather than as a product of its operating subsidiary, WFHMI. Similarly, the Wells Fargo South Dakota bank could not offer student loans to Santa Clara County customers. In this regard, the Ordinance also conflicts with

national banks' powers under 12 C.F.R. §§ 5.34, 5.39 & 7.4006 and other OCC regulations to organize and operate in the corporate and organizational forms that national banks find most convenient and useful.

60. The Ordinance's separate notice requirements specific to Santa Clara County customers are different and more burdensome than the notice requirements Plaintiff Banks are required to follow for their nationwide operations. These requirements would disrupt Plaintiff Banks' operations. As such, the Ordinance impairs the exercise of national banks' powers under 12 U.S.C. § 24(Seventh).

61. The Ordinance would also impair the ability of Wells Fargo Bank Nevada, as a national bank, to sell, solicit and crossmarket insurance and certain other products and services to the Santa Clara County customers of Wells Fargo Bank through "joint agreements" with other financial institutions, as it now does pursuant to 15 U.S.C. § 6802(b)(2). By subjecting such joint agreements to a customer "opt in," the Ordinance would prevent or significantly interfere with the ability of national banks, like Plaintiff Wells Fargo Bank Nevada, to advertise and market to Santa Clara County customers and potential customers through such agreements.

62. The Ordinance, insofar as it applies to Plaintiffs, as national banks and their subsidiaries, is therefore preempted under Article VI of the United States Constitution by the National Bank Act, 12 U.S.C. § 24(Seventh), as it is implemented by the OCC's regulations.

### Count III – Declaratory and Injunctive Relief:
### GLBA Insurance Provision Preemption of the Ordinance

63. Plaintiffs incorporate and reallege each and every allegation contained in paragraphs 1 to 47 of this Complaint as though fully set forth herein.

64. Section 104(d)(2)(A) of GLBA provides that "[i]n accordance with the legal standards for preemption set forth in the decision of the Supreme Court of the United States in *Barnett Bank of Marion County, N.A. v. Nelson*, 517 U.S. 25 (1996), no State may, by statute, regulation, order, interpretation, or other action, prevent or significantly interfere with

the ability of a depository institution, or an affiliate thereof, to engage, directly or indirectly, either by itself or in conjunction with an affiliate or any other person, in any insurance sales, solicitation, or crossmarketing activity." 15 U.S.C. § 6701(d)(2)(A).

65.     The Banks are depository institutions within the meaning of 15 U.S.C. § 6701(d)(2)(A).  They are affiliated with their Insurance Affiliates and regularly share or disclose their customer names and addresses with their Insurance Affiliates in order facilitate the sale, solicitation and crossmarketing of insurance by their Insurance Affiliates.

66.     The Ordinance prevents or significantly interferes with the ability of Plaintiff Banks to share or disclose such information and the ability of their Insurance Affiliates to engage in such insurance sales, solicitation and crossmarketing activities.

67.     The Ordinance also prevents or significantly interferes with the ability of WFII and Wells Fargo Bank Nevada to sell, solicit and crossmarket insurance through joint agreements, as authorized by 15 U.S.C. § 6802(b)(2).

68.     The Ordinance accordingly is preempted under Article VI of the United States Constitution by 15 U.S.C. § 6701(d)(2)(A).

### Count IV – Declaratory and Injunctive Relief:
### Preemption of Local Enforcement of the Ordinance

69.     Plaintiffs incorporate and reallege each and every allegation contained in paragraphs 1 to 47 of this Complaint as though fully set forth herein.

70.     The Ordinance subjects national banks to monetary liabilities, and provides for administrative enforcement by local officials.

71.     Under the NBA, 12 U.S.C. § 484, and other provisions of the federal banking laws and OCC regulations, the OCC has exclusive regulatory and enforcement authority over Plaintiff Banks, and other national banks, as well as their subsidiaries, with regard to their sharing and disclosure of customer information with affiliates and nonaffiliated third parties as well as with regard to the customer information sharing and disclosure notices of national banks and their subsidiaries.

72.     The enforcement of the Ordinance is preempted under Article VI of the United States Constitution, insofar as it applies to national banks and their subsidiaries, including Plaintiffs, by 12 U.S.C. § 484 and other provisions of the federal banking laws and applicable OCC implementing regulations, because it conflicts with the OCC's exclusive enforcement authority over national banks and their subsidiaries with regard to their authorized products and services.

### Count V – Attorneys' Fees:
### Claim Under 42 U.S.C. § 1983

73.     Plaintiffs incorporate and reallege each and every allegation contained in paragraphs 1 through 47 of this Complaint as though fully set forth herein.

74.     Plaintiffs are granted federal rights under the FCRA, NBA, GLBA, and Article VI of the United States Constitution to share their customer information among affiliated corporations, and nonaffiliated third parties free of state and local requirements, restrictions and prohibitions like those imposed by the Santa Clara Ordinance.

75.     By adopting, implementing and enforcing the Santa Clara Ordinance, Defendants are thus depriving Plaintiffs of their federal rights under the FCRA, NBA, GLBA, and Article VI of the United States Constitution.

76.     Plaintiffs are "persons" under 42 U.S.C. § 1983 who have acted under color of state law to deprive Plaintiffs of rights secured by the federal Constitution and laws.

77.     Plaintiffs have incurred attorneys' fees in pursuance of their claims that are recoverable from Defendants under 42 U.S.C. § 1988.

### Prayer for Relief

WHEREFORE, Plaintiffs pray that this Court:

A. Enter a judgment declaring that the County of Santa Clara Ordinance Number NS-300.706 (enacted February 11, 2003), null and void and unenforceable, insofar as it applies to Plaintiffs, as national banks, or national bank subsidiaries and/or affiliates, because it is preempted under Article VI of the United States Constitution as being (i) expressly preempted

1    by the Fair Credit Reporting Act, and section 104 of the Gramm-Leach-Bliley Act of 1999, Pub.

2    L. No. 106-102; and (ii) in conflict with the National Bank Act and implementing OCC

3    regulations;

4          B.  Enter a permanent injunction, Plaintiffs having no adequate remedy at law

5    and suffering irreparable injury as a result of this unconstitutional local Ordinance, ordering

6    Defendants to suspend the Ordinance, and otherwise enjoining Defendants, as well as any other

7    person acting in the name of the County of Santa Clara, or of the People of the State of

8    California, from allowing the Ordinance to become effective, or enforcing or taking any action

9    to enforce the Ordinance;

10          C.  Should Plaintiffs so move, enter a preliminary injunction pending final

11    resolution of this action, Plaintiffs having no adequate remedy at law and suffering irreparable

12    injury as a result of this unconstitutional local Ordinance, ordering Defendants to suspend the

13    Santa Clara Ordinance, and enjoining Defendants, as well as any other person acting in the

14    name of the County of Santa Clara, or of the People of the State of California, from enforcing or

15    taking any action to enforce the Ordinance, pending further order of this Court;

16          D.  Award Plaintiffs their reasonable attorneys' fees pursuant to 42 U.S.C.

17    § 1988; and

18

19

20

21

22

23

24

25

26

27

28

1

E.  Grant Plaintiffs such other and further relief, including costs, as the Court

2

may deem just and proper.

3

4

5

6

_____

RICHARD A. JONES  (State Bar No. 135248)

E. EDWARD BRUCE                        COVINGTON & BURLING

7

STUART C. STOCK                        One Front Street

KEITH A. NOREIKA                       San Francisco, California 94111

8

COVINGTON & BURLING                    Telephone: (415) 591-6000

1201 Pennsylvania Avenue, N.W.         Fax: (415) 591-6091

9

Washington, D.C. 20004

10

Telephone: (202) 662-6000

Fax: (202) 662-6291                    ATTORNEYS FOR PLAINTIFFS

11

12

Dated:  October 22, 2003

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit A

ORDINANCE NO. NS-300.706

# AN ORDINANCE OF BOARD OF SUPERVISORS OF THE COUNTY OF SANTA CLARA ADDING DIVISION B4 TO THE COUNTY OF SANTA CLARA COUNTY ORDINANCE CODE RELATING TO THE PROTECTION OF PRIVATE FINANCIAL INFORMATION

THE BOARD OF SUPERVISORS OF THE COUNTY OF SANTA CLARA ORDAINS AS FOLLOWS:

Title B of the County of Santa Clara Ordinance Code is amended by adding a new Division, to be numbered and entitled to read as follows:

## Division B4

## PRIVACY OF FINANCIAL INFORMATION

Sec. B4-1.  Short Title.

This Division shall be known and may be cited as the "County of Santa Clara Financial Information Privacy Ordinance." This Division shall become operative on January 1, 2004.

Sec. B4-2.  Purpose.

(a) It is the purpose and intent of the Board of Supervisors that the operation of financial institutions as defined in this Division should be regulated so as to provide customers of financial institutions notice and meaningful choice about how customers' personal information is shared or sold by their financial institutions.

(b) The intent of the Board of Supervisors in enacting this Division is to (1) afford consumers greater privacy protection than that provided in the federal Gramm-Leach-Bliley Act (15 U.S.C. Secs. 6801 et seq.), and (2) supplement the federal Fair Credit Reporting Act (15 U.S.C. Secs. 1681 et seq.) by affording greater protection to consumers than is provided under the Fair Credit Reporting Act. The provisions of this Division should be interpreted to be consistent with these purposes.

Sec. B4-3. Definitions.

For purposes of this Division:

(a) "Confidential consumer information" means personally identifiable information (1) that a consumer provides to a financial institution to obtain a product or service from the financial institution, (2) about a consumer resulting from any transaction involving a product or service between the financial institution and a consumer, or (3) that the financial institution otherwise obtains about a consumer in connection with providing a product or service to that consumer. Confidential consumer information does not include publicly available information that is lawfully made available to the general public from (1) federal, state, or local government records, (2) widely distributed media, or (3) disclosures to the general public that are required to be made by federal, state, or local law. Confidential consumer information shall included any list, description, or other grouping of consumers, and publicly available information pertaining to them that is derived using any confidential consumer information, but shall not include any list, description, or other grouping of consumers, and publicly available information pertaining to them that is derived without using any confidential consumer information.

(b) Confidential consumer information includes, but is not limited to, the following:

(1) Information a consumer provides to a financial institution on an application to obtain a loan, credit card, or other financial product or service.

(2) Account balance information, payment history, overdraft history, and credit or debit card purchase information.

(3) The fact that an individual is or has been a customer of a financial institution or has obtained a financial product or service from a financial institution.

(4) Any information about a financial institution's customer if it is disclosed in an manner that indicates that the individual is or has been the financial institution's customer.

(5) Any information that a consumer provides to a financial institution or that a financial institution or its agent otherwise obtains in connection with collecting on a loan or servicing a loan.

(6) Any information collected through an Internet cookie or any information collecting device from a Web server.

(7) Information from a consumer report.

(8) A consumer's Social Security number.

(c) "Financial institution" generally means any institution located and doing business in unincorporated County of Santa Clara that significantly engages in financial activities as described in Section 1843(k) of Title 12 of the United States Code. The term "financial institution" does not include the Federal Agricultural Mortgage Corporation or any entity chartered and operating under the Farm Credit Act of 1971 (12 U.S.C. Sec. 2001 et seq.), provided that the entity does not sell or transfer confidential consumer information to a nonaffiliated third party. The term "financial institution" does not include institutions chartered by Congress specifically to engage in a proposed or actual securitization, secondary market sale, including sales of servicing rights, or similar transactions related to a transaction of the consumer, as long as those institutions do not sell or transfer confidential consumer information to a nonaffiliated third party. The term "financial institution" does not include any person licensed as a dealer under Article 1 (commencing with Section 11700) of Chapter 4 of Division 5 of the Vehicle Code that enters into contracts for the installment sale or lease of motor vehicles pursuant to the requirements of Chapter 2b (commencing with Section 2981) or 2d (commencing with Section 2985.7) of Title 14 of Part 4 of Division 3 of the Civil Code and assigns substantially all of those contracts to financial institutions within 30 days. The term "financial institution" does not include any provider of professional services, or any wholly owned affiliate thereof, that is prohibited by rules of professional ethics or applicable law from voluntarily disclosing confidential client information without the consent of the client.

(d) "Affiliate" means any person or entity that, directly or indirectly, controls, is controlled by, or is under common control with another person or entity. A franchisor, including any affiliate thereof, shall be deemed an affiliate of the franchisee for purposes of this Division.

(e) "Nonaffiliated third party" means any entity that is not an affiliate of, or related by common ownership or affiliated by corporate control with, the financial institution.

(f) "Consumer" means a natural person, or that person's legal representative, that obtains or has obtained a financial product or service from a financial institution that is to be used primarily for personal, family, or household purposes, and the person (A) resides in unincorporated County of Santa Clara, or (B) obtains or has obtained the product or service

while present in unincorporated County of Santa Clara.  For purposes of this Division, a person shall be considered a resident of unincorporated County of Santa Clara if the person's last known mailing address, as shown on the records of the financial institution, is located in unincorporated County of Santa Clara.

(g) "Control" means the direct or indirect possession of power to direct or cause the direction of the management and policies of another entity.  Control includes any of the following: (1) ownership or power to vote 25 percent or more of the outstanding shares of any class of voting security of a company, acting through one or more persons, (2) power in any manner over the election of a majority of the directors, or of individuals exercising similar functions, or (3) power to exercise a directing influence over the management of policies of a company.

(h) "Necessary to effect, administer, or enforce" means the following:

(1) The disclosure is required, or is a usual, appropriate, or acceptable method to carry out the transaction or the product or service business of which the transaction is a part, and record or service or maintain the consumer's account in the ordinary course of providing the financial service or financial product, or to administer or service benefits or claims relating to the transaction or the product or service business of which it is a part, and includes the following:

(A) Providing the consumer or the consumer's agent or broker with a confirmation, statement, or other record of the transaction, or information on the status or value of the financial service or financial product.

(B) The accrual or recognition of incentives or bonuses associated with the transaction that are provided by the financial institution or another party involved in providing the financial service or product.

(2) The disclosure is required or is a lawful method to enforce the rights of the financial institution or of other persons engaged in carrying out the financial transaction or providing the product or service.

(3) The disclosure is required, or is a usual, appropriate, or acceptable method for insurance underwriting at the consumer's request, for reinsurance purposes, or for any of the following purposes as they relate to a consumer's insurance:

Page 4 of 12

(A) Account administration.

(B) Reporting, investigating, or preventing fraud or material misrepresentation.

(C) Processing premium payments.

(D) Processing insurance claims.

(E) Administering insurance benefits, including utilization review activities.

(F) For internal research purposes.

(G) As otherwise required or specifically permitted by federal or state law.

(4) The disclosure is required, or is a usual, appropriate or acceptable method, in connection with the following:

(A) The authorization, settlement, billing, processing, clearing, transferring, reconciling, or collection of amounts charged, debited, or otherwise paid using debit, credit or other payment card, check or account number, or by other payment means.

(B) The transfer of receivables, accounts, or interest therein.

(C) The audit of debit, credit, or other payment information.

(i) "Financial product or service" means any product or service that a financial holding company could offer by engaging in an activity that is financial in nature or incidental to financial activity under subsection (k) of Section 1843 of Title 12 of the United States Code (the United States Bank Holding Company Act of 1956). Financial service includes a financial institution's evaluation or brokerage of information that the financial institution collects in connection with a request or an application from a consumer for financial product or service.

(j) "Clearly and conspicuously" means displayed in a manner that is readily noticeable, readable, and understandable to consumers. Factors to be considered in

determining whether a notice or disclosure is clear and conspicuous include prominence, proximity, absence of distracting elements, and clarity and understanding of the disclosure.

(k) "Widely distributed media" means publicly available information from a telephone book, a television or radio program, a newspaper or a Web site that is available to the general public on an unrestricted basis.

Sec. B4-4.  Non-Disclosure of Confidential Consumer Information.

(a) A financial institution shall not disclose to or share a consumer's confidential consumer information with any nonaffiliated third party or affiliate unless (1) the financial institution has provided written or electronic notice to the consumer to whom the confidential consumer information relates and (2) the financial institution has obtained a written or electronic consent acknowledgment from the consumer that authorizes the financial institution to disclose or share the confidential consumer information. A financial institution shall not deny a consumer a financial product or a financial service because the consumer has not provided the consent required by this section to authorize the financial institution to disclose or share his or her confidential consumer information with any nonaffiliated third-party or affiliate.

(b) Nothing in this Division shall prohibit a financial institution from marketing its own products and services or the products and services of others to the financial institution's own customers, provided no confidential consumer information is disclosed except as permitted by Section B4-6.

(c) Except as otherwise provided in this Division, an entity that receives confidential consumer information from a financial institution under this Division shall not disclose this information to any other entity, unless the disclosure would be lawful if made directly to the other entity by the financial institution.

Sec. B4-5.  Notice and Consent.

(a) Nothing in this Division shall require a financial institution to provide a written or electronic notice to a consumer pursuant to Section B4-4(a) if the financial institution does not disclose confidential consumer information to any nonaffiliated third-party or to any affiliate other than as provided in Section B4-6.

(b) A financial institution shall provide written or electronic notices and consent acknowledgments required by this Division to consumers as separate documents that are easily identifiable and distinguishable from other documents that otherwise may be provided to a consumer. A notice provided to a member of a household pursuant to Section

B4-4 shall be considered notice to all members of that household unless that household contains another individual who also has a separate account with the financial institution. Such notices may be sent to the consumer with other notices required under the federal Gramm-Leach-Bliley Act (15 U.S.C. Sections 6801 et seq.).

(c) Written notices required by this Division shall include at least the following:

(1) The specific types of information that would be disclosed or shared,

(2) The general circumstances under which the information would be disclosed or shared,

(3) The specific types of persons or businesses that would receive the information, and

(4) The specific proposed types of uses for the information.

(d) The notices required by this Division shall be issued to the consumer as frequently as is required by the federal Gramm-Leach-Bliley Act, 15 U.S.C. Sec. 6803(a). Unless revoked by the consumer, consent received by a consumer, as described in the notice, shall be notice deemed valid until such time as another notice is required to be issued to the consumer.

Sec. B4-6.  Exempt Disclosures.

(a) This Division shall not apply to information that is not personally identifiable to a particular person.

(b) Sections B4-4 and B4-5 shall not prohibit the release of confidential consumer information under the following circumstances:

(1) The confidential consumer information is necessary to effect, administer, or enforce a transaction requested or authorized by the consumer, or in connection with servicing or processing a financial product or service requested or authorized by the consumer, or in connection with maintaining or servicing the consumer's account with the financial institution, or with another entity as part of a private label credit card program or other extension of credit on behalf of such entity, or in connection with a proposed or actual securitization or secondary market sale, including sales of servicing rights,

related to a transaction of the consumer.

(2) The confidential consumer information is released with the consent of or at the direction of the consumer.

(3) The confidential consumer information is:

    (A) Released to protect the confidentiality or security of the financial institution's records pertaining to the consumer, the service or product, or the transaction therein.

    (B) Released to protect against or prevent actual or potential fraud, identity theft, unauthorized transactions, claims or other liability.

    (C) Released for required institutional risk control, or for resolving customer disputes or inquiries.

    (D) Released to persons holding a legal or beneficial interest relating to the consumer.

    (E) Released to persons acting in a fiduciary or representative capacity on behalf of the consumer.

(4) The confidential consumer information is released to provide information to insurance rate advisory organizations, guaranty funds or agencies, applicable rating agencies of the financial institution, persons assessing the institution's compliance with industry standards, and the institution's attorneys, accountants, and auditors.

(5) The confidential consumer information is released to the extent specifically required or specifically permitted under other provisions of law and in accordance with the Right to Financial Privacy Act of 1978 (12 U.S.C. Sec. 3401 et seq.), to law enforcement agencies, including a federal functional regulator, the Secretary of the Treasury with respect to 12 U.S.C. Secs. 1951-1959, the California Department of Insurance, or the Federal Trade Commission, and self-regulatory organizations.

(6) The confidential consumer information is released (A) to a consumer reporting agency in accordance with the Fair Credit Reporting Act (15 U.S.C.

Sec. 1681 et seq.), or (B) from a consumer report reported by a consumer reporting agency.

(7) The confidential consumer information is released in connection with a proposed or actual sale, merger, transfer, or exchange of all or a portion of a business or operating unit if the disclosure of confidential consumer information solely concerns consumers of the business or unit.

(8) The confidential consumer information is released to comply with federal, state, or local laws, rules, and other applicable legal requirements; to comply with a properly authorized civil, criminal, or regulatory investigation or subpoena or summons by federal, state, or local authorities; or to respond to judicial process or government regulatory authorities having jurisdiction over the financial institution for examination, compliance, or other purposes as authorized by law.

(9) When a financial institution is reporting a known or suspected instance of elder or dependent adult financial abuse or is cooperating with a local adult protecting services agency investigation of known or suspected elder or dependent adult financial abuse pursuant to Article 3 (commencing with Section 15630) of Chapter 11 of Part 3 of Division 9 of the Welfare and Institutions Code.

(10) The confidential consumer information is released to an affiliate or a nonaffiliated third party in order for the affiliate or nonaffiliated third party to perform services for or functions on behalf of, the financial institution in connection with the financial institution's products and services, such as mailing services, data processing or analysis, or customer surveys, provided that all of the following requirements are met:

(A) The services to be performed by the affiliate or nonaffiliated third party would be lawful if performed by the financial institution.

(B) If the confidential consumer information is disclosed to an affiliate, the affiliate does not use or disclose the confidential consumer information other than to carry out the purpose for which the financial institution disclosed the information.

(C) If the confidential consumer information is disclosed to a non-affiliated third party, there is a written contract between the

nonaffiliated third party and the financial institution that prohibits the nonaffiliated third party from disclosing or using the confidential consumer information other than to carry out the purpose for which the financial institution disclosed the information, as set forth in the written contract.

(D) The confidential consumer information provided to the affiliate or nonaffiliated third party is limited to that which is reasonably necessary for the affiliate or nonaffiliated third party to perform services contracted for on behalf of the financial institution.

(11) The confidential consumer information is released to identify or locate missing and abducted children, witnesses, criminals and fugitives, parties to lawsuits, parents delinquent in child support payments, organ and bone marrow donors, pension funds beneficiaries, and missing heirs.

(c) Nothing in this Division is intended to change existing law relating to access by law enforcement agencies to information held by financial institutions.

Sec. B4-7.   Administrative Fines.

(a) Any financial institution that negligently discloses or shares confidential consumer information in violation of this Division shall be liable, irrespective of the amount of damages suffered by the consumer as a result of that violation, for an administrative fine not to exceed two thousand five hundred dollars ($2,500) per violation.

(b) Any financial institution that knowingly and willfully obtains, discloses, or uses confidential consumer information in violation of this Division shall be liable upon a first violation, for an administrative fine not to exceed two thousand five hundred dollars ($2,500) per violation, or upon a second violation for an administrative fine not to exceed ten thousand dollars ($10,000) per violation, or upon a third or subsequent violation for an administrative fine not to exceed twenty-five thousand dollars ($25,000) per violation.

(c) Any financial institution that knowingly and willfully obtains, discloses, or uses confidential consumer information in violations of this Division for financial gain shall be liable upon a first violation of this Division for an administrative fine not to exceed five thousand dollars ($5,000) per violation, or upon a second violation for an administrative fine not to exceed twenty-five thousand dollars ($25,000) per violation, or upon a third or subsequent violation for an administrative penalty not to exceed two hundred fifty thousand dollars ($250,000) per violation and shall be subject to disgorgement of any

proceeds or other consideration obtained as a result of the violation.

    (d) Nothing in this Division shall be construed as authorizing an administrative fine under both paragraphs (b) and (c) for the same violation.

Sec. B4-8.  Fair Credit Reporting Act or Federal Conflict.

    This Division shall not be construed in a manner that is inconsistent with the federal Fair Credit Reporting Act (15 U.S.C. Sec. 1681 et seq.).

//

//

//

//

//

//

//

//

//

//

//

//

//

//

Sec. B4-9. Severability.

The provisions of this Division shall be severable, and if any section, subsection, phrase, clause, sentence, or word in this Division is declared to be invalid, unconstitutional, or preempted by federal or state law or regulation, the validity of the remainder of this ordinance shall not be affected thereby.

PASSED AND ADOPTED by the Board of Supervisors of the County of Santa Clara, State of California, on _____, 2003, by the following vote:

AYES:      Supervisors

NOES:      Supervisors

ABSENT:    Supervisors

ABSTAIN:   Supervisors

_____
Blanca Alvarado, Chairperson
Board of Supervisors

ATTEST:

_____
Phyllis A. Perez,
Clerk of the Board of Supervisors

APPROVED AS TO FORM AND LEGALITY:

_____
Lisa Herrick
Deputy County Counsel

Rev012803                          Page 12 of 12